## J. Woods v. Wichita Falls Building & Loan Association et al.

No. 6689.   Decided June 10, 1936.
Rehearing overruled July 22, 1936.
(96 S. W., 2d Series, 64.)

*Joseph W. Hale,* of Waco, for plaintiff in error.

The question of the solvency or insolvency of a building and loan association organized under the laws of Texas rests in the sound discretion of the Commissioner of Banking, whose decision, in the absence of any abuse of discretion or fraud, is conclusive, and an association which has established in an investigation to determine such question, after suit has been filed against it by a withdrawing member, to the satisfaction of the Commissioner, that it is solvent is estopped from setting up the defense in the suit that it is insolvent. Collier v. Smith, 169 S. W., 1108; Brooks v. Austin, 206 S. W., 725; Austin v. Guaranty State Bank, 300 S. W., 129; Kennedy v. Gibson, 75 U. S., 505, 19 L. Ed., 478.

*E. M. Mann,* of Wichita Falls, for defendant in error.

Because the evidence introduced upon the trial conclusively showed that the defendant had no idle funds on hand at the date of plaintiff's withdrawal notice, or at any time since such date, sufficient to pay plaintiff's contribution to the capital stock of defendant association, and because of numbers of applications, whose claims preceded that of plaintiff's, and because the Board of Directors of said association had ordered that withdrawing stockholders be paid upon a proportionate basis, said association was insolvent and to have paid plaintiff in full for his claim would have been a discrimination. And, further, there being no evidence that the Banking Commissioner had ever passed upon the question of solvency or insolvency of the association, and that the association had not presented that question to him, and, if it had, he was not authorized to pass upon the question, as it was a judicial power resting alone with the courts, the association was not estopped from pleading insolvency on the trial. Stone v. New Schiller Building & Loan Assn., 302 Pa., 544, 153 Atl., 758; Publicker v. Pottash Brothers Building & Loan Assn., 104 Pa., 530, 159 Atl., 58; City Packing Co. v. Brooks Paper Co., 62 S. W. (2d) 622.

*Wood & Wood,* of Austin, filed brief as amicus curiae.

MR. JUSTICE CRITZ delivered the opinion of the court.

This suit was filed in the District Court of Wichita County

by J. Woods against Wichita Falls Building & Loan Association and its Board of Directors to recover the withdrawal value of 260 shares of prepaid or advance payment stock owned by Woods and issued by such Association, and for proper mandatory injunction to compel the payment of the judgment prayed for. Trial in the district court resulted in a judgment for the Association. On appeal by Woods this judgment was affirmed by the Fort Worth Court of Civil Appeals. 66 S. W. (2d) 718. Woods brings error.

It appears undisputed that Woods purchased 260 shares of prepaid or advance payment stock in the Association, for which he paid the Association the total sum of $13,000.00 in cash. It also appears that Woods is a nonborrowing member of such Association, and that such stock is entitled to certain dividends according to the books and records of the Association.

We shall not attempt to detail the pleadings of the parties. It is enough to say that for the purposes of this opinion we shall treat such pleadings as sufficient to raise the questions of law we shall decide.

An examination of the record before us discloses that the Association is a regular building and loan association, duly chartered under the building and loan association laws of this State, and that it was operating at the time of this trial as a going concern. The record before us further discloses that the Association was permitted by the district court to defend against Woods' right to recover as a withdrawing member on the ground that it was insolvent in a building and loan sense. Under our statutes, a building and loan association is insolvent, "Whenever the losses of any building and loan association, resulting from depreciation in value of its securities or otherwise, exceed its contingent reserve fund, undivided profits and current earnings, so that the estimated value of its assets is less than the total amount due its members, * * *." Article 881a-56, Vernon's Revised Civil Statutes of Texas, Vol. 2 (Acts 1929, 41st Legislature, 2d Called Session, p. 100, ch. 61, sec. 57). As shown by the record, the trial court found the Association insolvent, and, expressly based on that finding alone, rendered judgment that Woods take nothing against it. The Court of Civil Appeals, in effect, sustained such ruling.

Simply stated, Woods contended in the two lower courts, and by proper assignments here contends, that under the facts of this record the defense of insolvency was not available to this Association in this cause for the following reasons:

(1). Because pertinent building and loan association stat-

utes in this State, in effect, prohibit such defense.

(2). Because the undisputed facts in this record estop the Association from offering the defense of its insolvency in this cause.

We are of the opinion that both of the above contentions should be sustained.

At this point we deem it expedient to quote certain building and loan association statutes of this State directly pertinent to the matter under discussion. Such statutes are as follows:

"Art. 881a-7. Supervision and control.

"The Banking Commissioner of Texas shall have supervision over and control of all building and loan associations doing business in this State, and shall be charged with the execution of the laws of this State relating to such associations; and except in the manner provided in this Act (Arts. 881a-1 to 881a-68; P. C. Arts. 1136a-1 to 1136a-9), no corporation or association shall conduct or carry on the business which is described and defined in Section 1 (art. 881a-1), hereof; provided, that this section does not include persons, co-partnerships or corporations engaged in any kind of banking business. (Acts 1929, 41st Leg., 2nd C. S., p. 100, ch. 61, sec. 7.)."

"Art. 867. Liquidation.

"Whenever it shall appear to the Commissioner that the affairs of any such association are in an unsound condition, or that it is conducting its business in an unsafe or unlawful manner, such Commissioner shall at once notify the board of directors of such association, giving them twenty days in which to restore its affairs to a safe and sound condition; or to discontinue its illegal practices. If after twenty days such restoration shall not have been made, or such illegal practices shall have not been discontinued, said Commissioner may order one of the examiners appointed to examine such association, or a special examiner appointed for that purpose, to take possession of all books, records and assets of every description of such association and hold and retain possession of the same pending the further proceedings hereinafter specified. Should the board of directors, secretary or person in charge of such association refuse to permit the said examiner to take possession aforesaid, said Commissioner shall communicate such fact to the Attorney General, whereupon the Attorney General shall at once institute such proceedings as may be necessary to place such examiner in immediate possession of the property of such association. Upon taking possession of the effects of the association as aforesaid, said examiner shall prepare a full and

true statement of the affairs and conditions of such association, including an itemized statement of its assets and liabilities, and shall receive and collect all debts, dues and claims belonging to it, and may pay the immediate and reasonable expense of his trust. Said examiner shall be required to execute to the Commissioner a good and sufficient bond to be approved by such Commissioner, conditioned for the faithful discharge of his duties as custodian of such association. The Commissioner shall, within fifteen days next after said examiner has acquired possession of the property of such association, convene a special meeting of the shareholders for the purpose of considering and acting upon the examiner's report of the affairs and conditions of such association as found by him from his examination thereof. The shareholders may, at said special meeting, by votes of those owning two-thirds of the shares in force, resolve to go into liquidation and for that purpose may, by a majority vote of those present elect from their number a receiver and fix his compensation. The compensation to be allowed a receiver under this title shall be an amount reasonable in proportion to the value of the property of the association, and in no event shall exceed $2500.00 per annum. A copy of said resolution duly certified by the presiding officer and secretary of said special meeting, together with the name and address of the receiver thus elected, shall be filed with the Commissioner. Said receiver shall be charged with a proper distribution of the assets, the discharge of all liabilities and final closing up of the business of such association. Before he shall enter upon the duties of his office, he shall be required to execute to the association a good and sufficient bond, conditioned for the faithful discharge of his duties, which shall be approved by and filed with said Commissioner. Upon the election and qualification of said reeciver as aforesaid, the examiner shall, when so ordered by the Commissioner, turn over and deliver to said receiver all the books, papers and effects of every description in his hands belonging to such association. Said receiver shall, upon the completion of said duties intrusted to him, prepare a statement to that effect, reciting therein that all of the liabilities of such association have been completely discharged (as far as its assets will permit) and its assets and property distributed among all the persons entitled thereto. Said statement shall be subscribed and sworn to by said receiver and filed with the Commissioner, and a notice of such dissolution shall be published for three successive weeks in a newspaper published in the county wherein the principal office of such association is

located. Upon the filing of said statement and making publication as aforesaid, such association shall be deemed dissolved. (Id. Sec. 17.)"

"Art. 881a-13. Illegal, unauthorized, unsafe, or fraudulent practices—Remedies.

"In case the Banking Commissioner of Texas shall find, upon examination or from other evidence, that any building and loan association is conducting its business, in whole or in part, contrary to law, or failing to comply with the law, that its assets are less than its liabilities, including all its capital stock, or is conducting its business in an unsafe, unauthorized or fraudulent manner, the Banking Commisioner of Texas shall, by an order in writing addressed to the president of such association, direct attention thereto and order compliance with the law, and that the assets be increased to equal liabilities, and in case such association shall refuse or neglect to comply with any such order lawfully made, or in case any such association is insolvent or in danger of insolvency, or its assets are impaired, then the Banking Commissioner of Texas shall annul its certificate of authority and may begin an action to revoke the charter of such association and for the appointment of a receiver thereof and the winding up of its affairs. Any action begun under this Section shall be brought in the county where such association has its principal place of business, and in the name of the State of Texas on relation of the Banking Commissioner of Texas, and shall be prosecuted by the Attorney General. (Acts 1929, 41st Leg., 2nd C. S., p. 100, ch. 61, sec. 13.)"

"Art. 881a-56. Reduction of liability to members.

"Whenever the losses of any building and loan association, resulting from depreciation in value of its securities or otherwise, exceed its contingent reserve fund, undivided profits and current earnings, so that the estimated value of its assets is less than the total amount due its members, the Banking Commissioner of Texas upon petition of such building and loan association, may order a reduction of its liability to its members, except upon juvenile shares, in such manner as to distribute the loss equitably among such members. If thereafter, such association shall realize from such assets a greater amount than was fixed in the order of reduction, such excess shall be divided among members whose credits were so reduced, but to the extent of such reduction only. (Acts 1929, 41st Leg., 2nd C. S., p. 100, ch. 61, sec. 57.)"

■■ Under the provisions of Article 881a-7, supra, the Banking Commissioner is given supervision and control over all

building and loan associations doing business in this State. The several pertinent statutes now in force, and in force at the time the transactions here involved took place, define the way and manner in which this control shall be exercised by the Commissioner. We shall not here consume the space to fully discuss all of these statutes, but we think that a casual reading of Articles 867, 881a-13, 881a-56, supra, discloses that they plainly, and in no uncertain terms, make it unlawful for insolvent building and loan associations to continue in business, or to retain their permits to do business in this State. Articles 867 and 881a-13, supra, in effect make it the exclusive primary duty of the Banking Commissioner to determine the question of insolvency, and if he determines that the association is insolvent, and it fails after notice to make itself solvent, it is his duty to annul its permit to do business. Also, the Banking Commissioner is given certain other duties in the statutes defined, which are intended to prevent the operation of insolvent associations in this State. A reading of Article 881a-56, supra, further demonstrates that it is unlawful for an insolvent building and loan association to continue in business in this State. This statute also further demonstrates that the determination of the solvency or insolvency of a building and loan association is primarily for the Banking Commissioner. It will be noted that it authorizes the writing down or reduction of an insolvent building and loan association's liability to its members, so as to make it a solvent concern. Here, however, the supervision and control of the Commissioner is fully preserved. The Commissioner must determine the necessity of the writing down,—that is the insolvency, and the amount thereof. Taking into consideration the very nature of a building and loan association, and the very provisions of the above-quoted statutes, we are compelled to the conclusion that the solvency or insolvency of a building and loan association is primarily for the determination of the Banking Commissioner, and his judgment and conclusion is not open to review, when lawfully exercised without fraud or abuse. Connally v. Continental Southland Savings & Loan Assn. (Com. App. opinion adopted), 121 Texas, 565, 51 S. W. (2d) 293. Furthermore, we think a building and loan association, under the statutes of this State, cannot exercise the rights of a going concern, retain its permit to do business, and then interpose the defense of insolvency in a stockholder's action to recover on his stock.

■ We also think the facts of this record present a clear case of estoppel against this Association. It appears that after the

filing of this suit, but before it was finally tried in the district court, Woods presented to the Banking Commissioner the matter of the solvency or insolvency of this concern, and the Commissioner, in response to such presentation, conducted an inquiry or investigation into such matter. If such investigation had convinced the Commissioner that a condition of insolvency existed, it was plainly his duty to conform to the pertinent statutes and require the Association to restore itself to solvency or suffer its permit to do business in this State to be annulled, and also to suffer the other consequences of insolvency prescribed by our statutes. It appears that the Association appeared before the Commissioner in the above inquiry and asserted its solvency in a building and loan association sense, and further asserted its right to continue in business as a solvent and going concern. It further appears that the Banking Commissioner found this Association solvent. Thus he refused to do any of the things that the law would have required him to do if he had found a condition of insolvency. All this at the instance of the Association. In our opinion, such a record presents a plain case of estoppel against the Association. Certainly, it should not be permitted in the proceedings before the Commissioner to assert its solvency and obtain a ruling and finding to that effect, with its consequent right to continue in business as a going concern, and then reverse itself and assert its insolvency when it is sued on a stock certificate. Smith v. Chipley, 118 Texas, 415, 16 S. W. (2d) 269; Hill v. Preston, 119 Texas, 522, 533, 34 S. W. (2d) 780. Finally, in this connection, we think that if this Association is insolvent the statutes prescribe the way and manner for that matter to be determined. The statutes also prescribe how solvency can be restored. These are exclusive statutes. Under such statutes a building and loan association cannot retain its permit to do business in this State, continue in business as a going concern, and then assert insolvency as a defense to a suit on a stock certificate.

It is evident from what we have said that we hold the defense of insolvency was not available to this Association in the trial of this case in the district court.

■■ Generally speaking, the owner of stock in a corporation has no right to withdraw his investment therefrom. If a person purchases stock in an ordinary corporation, either from the concern itself or from a stockholder thereof, the corporation is under no legal obligation to take up such stock, or to aid in its disposition. In fact, generally speaking, it would be

unlawful for a corporation to redeem its own stock. Building and loan associations, under our laws, constitute an exception to this general rule. Our statutes permit shareholders in such concerns to withdraw under certain circumstances. These circumstances are defined partly by statute and partly by the associations' by-laws. For a member to withdraw, he must conform to pertinent statutes and by-laws applicable to his case. When a nonborrowing shareholder in such a concern has given the proper notice, he has the right to withdraw his membership therein and receive payment for the withdrawal value of his stock in accordance with pertinent statutes and by-laws. In spite of this, it is the settled law of this State that a nonborrowing member of a building and loan association does not cease to become a member thereof and become a general creditor by giving notice of withdrawal. He simply thereby has a claim as a withdrawing member under pertinent statutes and by-laws. He never assumes the status or acquires the right of a general creditor. Eastland Building & Loan Assn. v. Williamson (Ct. Civ. App. writ refused), 78 S. W. (2d) 703, and authorities there cited.

As already stated, this case was tried by the district court on the theory that the defense of insolvency was available to the Association. On a finding of insolvency, and on that finding alone, it affirmatively appears that the district court entered judgment for the Association. We have held the defense of insolvency not available. We cannot conclusively say, from the record before us, that this case has otherwise been fully developed.

The judgments of the Court of Civil Appeals and of the District Court are both reversed, and this cause is remanded to the District Court for a new trial.

Opinion delivered June 10, 1936.

Rehearing overruled July 22, 1936.