### HOMESTEAD BLDG. & LOAN ASS'N v. LOUKAS.

#### No. 3147.

Court of Civil Appeals of Texas. Beaumont.

Nov. 24, 1937.

Rehearing Denied Dec. 1, 1937.

Fred A. White and B. T. McWhorter, Jr., both of Port Arthur, for appellant.

John H. Benckenstein, of Beaumont, for appellee.

COMBS, Justice.

The appellant, Homestead Building & Loan Association, is a corporation organized under the building and loan association statutes of the state of Texas. On May 12, 1930, appellee, John Loukas, purchased 30 shares of stock in the association of the matured value of $100 per share. The stock was what is designated as advance payment cumulative stock, for which the purchaser paid $50 per share in advance. The by-laws provided that said stock should be credited semiannually on the books of the association with its full prorata share of the stock in the net earnings of the company until such earnings added to the advance payment should equal $100 per share, at which time the association would redeem the stock at its face value. The by-laws of the association further provided: "The holder of Advance Payment Cumulative Stock shall have the right to cancel same at any time by giving thirty days' notice in writing to the Association of his intention to do so, and upon cancellation shall receive the amount paid on shares, together with all dividends credited, less lawful charges, if any."

The by-laws further provided: "The Association will not be bound to pay out on the withdrawal of any stock whatever during any one month more than one-half of its net receipts for that month, and stock of all kinds filed for withdrawal shall be paid in the order in which it is filed and notice given and without regard to the kind or class of stock. If the Association is indebted for matured stock, not more than one-third of the receipts of any one month shall be paid out for withdrawals during that month except on order of the Board of Directors."

On July 22, 1932, appellant gave the appellee 30 days' written notice of his intention to withdraw and received from the association the amount which he had paid for the stock, plus the accumulated earnings which had been credited to it. The appellant did not pay the appellee's claim and on April 28, 1936, he filed suit in the Fifty-Eighth district court of Jefferson county, alleging the facts as above stated, pleading in detail the association's by-laws and the statute applicable. He sought a money judgment for $2,129.51, the alleged value of the stock, and writ of execution for its enforcement. By its answer the appellant filed, first, a plea in abatement on the ground that the plaintiff's suit was prematurely filed, and, after the general demurrers, pleaded specifically that claims of other non-borrowing stockholders, aggregating $97,679, have been filed prior to the filing of plaintiff's claim for withdrawal; that there were outstanding matured shares aggregating $47,562, which shares had priority over the plaintiff's claim, and that defendant was indebted to a general creditor in the sum of $5,000. It further pleaded that its board of directors had ordered by resolution that request for withdrawals be paid out of the funds on hand on a prorata basis in accordance with article 881a—46, Vernon's Ann.Civ. St.

The case was submitted to the court upon an agreed statement of facts in which it was agreed that plaintiff had purchased the stock and had given the notice of withdrawal, as pleaded by him. It was agreed that the withdrawal value of his stock at the time of the trial was $1,980.99. It was agreed that 35 applications of nonborrower shareholders for withdrawals, aggregating $76,137.15, had been filed with defendant prior to July 22, 1932, the date on which plaintiff gave his notice; that claims of shareholders for withdrawals, aggregating $24,187.14, had been filed after the plaintiff's claim was filed; that matured stock in the association amounted to $59,051.04. It was further agreed that the board of directors had ordered that 50 per cent. of the receipts of the association be set aside for the making of loans and for conducting the general business of the association, the first of such orders being dated May 22, 1934. It was further agreed that the defendant association "has at all times been and now is a solvent building and loan association, and now is a going concern." A financial statement was attached, which showed appellant solvent, but that available cash on hand was less than the total amount of claims pending having priority over appellee's claim, if paid in order of registration and maturity.

The trial court entered judgment that plaintiff recover from the defendant a

money judgment for $1,980.99, with interest at the rate of 6 per cent. from August 22, 1932, for costs of suit and for execution for its enforcement. The trial court specifically held that the board of directors were without authority in law to order the plaintiff's claim paid on a prorata basis for the reason that the statute authorizing such action was passed subsequent to the time he bought his stock. The Building & Loan Association has appealed.

### Opinion.

The appellant contends that its board of directors had the right, by order passed after appellee's withdrawal claim had been on file for more than one year, to direct that all withdrawal claims including appellee's, shall be paid pro rata from funds on hand and available for that purpose. The contention must be overruled. Appellant's proposition is based solely on the assumption that the statute, article 881a—, § 46, as amended by the 42d Legislature, 3rd Called Sess., in 1932 (Vernon's Ann.Civ.St. art. 881a—46), conferred the power of prorating the payments.

Appellee purchased the stock in 1930. Therefore the amendment of 1932 has no application. The rights are to be determined by the by-laws of the association, and the statutes as they existed at the time of his purchase of the stock. Eastland Building & Loan Ass'n v. Williamson (Tex.Civ.App.) 78 S.W.2d 703 (writ refused), and cases cited. And, since neither conferred upon the board of directors the power to compel appellee to accept prorata payment of his withdrawal claim, the trial court did not err in so holding.

It is our conclusion, however, that appellee was not entitled to a money judgment and writ of execution. As a withdrawing stockholder he does not occupy the status of a general creditor. Woods v. Wichita Falls Building & Loan Ass'n (Tex.Sup.) 96 S.W.2d 64; Eastland Building & Loan Ass'n v. Williamson, supra. His rights are to be measured by the contract he made. His contract, to be determined by reference to existing by-laws and statutes, simply gave him the right to have his withdrawal claim paid in the order of its filing, out of the cash receipts collected for the purpose, in accordance with the provision of the by-laws above quoted. Of course the appellee would have the right upon proper averments to compel the association and its officers to set aside the proper proportion of its receipts for payment of claims for withdrawal and to pay such claims in the order of their filing, provided the association failed and refused to perform such duties. But such is not the nature of this suit. The appellee merely sought in this proceeding a money judgment and a writ of execution to enforce it. As pointed out above, he was not entitled to that relief.

It should be borne in mind that appellee was not the holder of paid up or matured stock, as was the case of the claimant in Connally v. Continental Southland Savings & Loan Ass'n, 121 Tex. 565, 51 S.W.2d 293. So, the holding there made that the holder of paid up or matured shares in a solvent building and loan association may maintain a suit for money demand has no application. Nor was there any question of insolvency of the association: On the contrary, it was specifically agreed that the association is a perfectly solvent going concern. There was, therefore, no question of the marshaling of assets or priority of rights of payment raised other than as provided by the by-laws of the association and the pertinent statutes. In other words on the showing here made appellee was entitled to have his contract enforced just as he made it. And so he was and is entitled to have his claim paid in due order. And in the meantime he is entitled to have his stock credited with its share of the profits, if any. He was not entitled to a money judgment.

The judgment of the trial court is reversed, and judgment here rendered for the appellant.