**HOMESTEAD BUILDING & LOAN ASS'N v. YOUNGBLOOD et ux.**

No. 3230.

Court of Civil Appeals of Texas. Beaumont.
Dec. 23, 1937.

Rehearing Denied Dec. 29, 1937.

828

B. T. McWhorter, Jr., and Fred A. White, both of Port Arthur, for appellant.

R. H. Jernigan and B. C. Johnson, both of Port Arthur, for appellees.

COMBS, Justice.

In 1930 the appellee A. Youngblood purchased 20 shares of advance payment cumulative stock in the appellant, Homestead Building & Loan Association, of the par value of $100 per share, paying therefor $50 per share in cash. The bylaws of this association provided that said stock should be credited semiannually on the books of the association with its full pro rata share of its stock in the net earnings of the company until such earnings added to the advance payment should equal $100 per share, at which time the association would redeem said stock at its face value. The bylaws also provided for the right of the holder to cancel the stock at any time by giving 30 days' notice in writing, and to receive the amount paid on the shares, together with all dividends credited, less lawful charges, if any. The pertinent provisions of the bylaws were set out in Homestead Building & Loan Ass'n v. John Loukas, Tex. Civ.App., 110 S.W.2d 246, and are here referred to.

Mr. Youngblood testified that on January 29, 1932, he gave notice in writing of his intention to cancel the stock, which application was accepted by Mr. Lyle, the secretary-treasurer of the appellant, as being in due form. Subsequently, Mr. Youngblood and his wife were divorced and by an agreed property settlement out of court Mr. Youngblood was given 10 of the 20 shares of stock in question; that he went to Mr. Lyle and arranged to have the old stock certificate canceled and two certificates for 10 shares each issued, one to him and one to his wife. That at said time he was assured by Mr. Lyle that the reissuance of the certificates would in nowise prejudice his application for withdrawal previously filed. He testified that he has made repeated demands for payment of the stock but that the association has failed and refused to pay it. He testified that the secretary informed him that the association had about $45,000 in cash on hand but that the banking commissioner had refused to give authority for paying withdrawal claims. The only other witness who testified was Judge R. L. Murray, who stated that he is, and has been for 12 years, a member of the board of directors of the association. He identified a copy of the bylaws which were placed in evidence, and testified that while the association had several thousand dollars in cash on hand he did not know whether it was available for payment of withdrawal claims. Judge Murray also testified that the association is a solvent, going concern.

The association offered no evidence but moved for an instructed verdict, which was overruled, and the trial court directed a verdict for the plaintiffs, Youngblood and wife (they having remarried in the meantime and were joined in this suit as plaintiffs). Judgment for $1,000 and 6 per cent. interest from and after March 1, 1932, for costs of suit and writ of execution was entered.

### Opinion.

■ Appellant's contention that the trial court erred in instructing a verdict because plaintiff's testimony was uncorroborated is overruled. The general rule that the testimony of an interested party serves only to raise an issue of fact, even when uncontradicted, is not of universal application. In Great Southern Life Ins. Co. v. Dorough, Tex.Civ.App., 100 S.W.2d 772, 775, the court said: "When the testimony of an interested witness is wholly uncontradicted, is clear, positive, and unequivocal on the point at issue, and there are no circumstances in evidence tending to discredit or impeach such testimony, conclusive effect should be given thereto." A long line of authorities are cited in support of the holding. Under that rule the trial court did not err in giving controlling effect to the testimony of Mr. Youngblood.

■ We also overrule the contention that appellees were required to file a new notice of withdrawal after the issuance of the two new stock certificates in lieu of the old one. According to the undisputed testimony, appellant's secretary agreed that the reissuance of the stock certificates would not affect the claim for withdrawal. Ownership of the stock was not changed except to convert the community ownership of Mr. and Mrs. Youngblood of the 20 shares into the separate ownership of the

same parties in severalty, 10 shares each. And whether it was necessary in strict compliance with the bylaws for a new notice to be filed or not the requirement was one which we think appellant could waive, and did waive under the circumstances shown.

It is our conclusion, however, that the trial court erred in awarding appellees a money judgment, with writ of execution. We recently had that question before us in Homestead Building & Loan Ass'n v. Loukas, 110 S.W.2d 246. And while in the case now before us the evidence is much more meager, and there was no showing by the association that there were not sufficient funds available for payment of appellees' claim, still appellees were not general creditors of the association. Woods v. Wichita Falls Bldg. & Loan Ass'n, Tex. Sup., 96 S.W.2d 64, 68; Eastland Bldg. & Loan Ass'n v. Williamson, Tex.Civ.App., 78 S.W.2d 703, writ refused.

In the Woods Case, supra, Mr. Justice Critz, speaking for our Supreme Court, said: "Our statutes permit shareholders in such concerns [building and loan associations] to withdraw under certain circumstances. These circumstances are defined partly by statute and partly by the association's by-laws. For a member to withdraw, he must conform to pertinent statutes and by-laws applicable to his case. When a nonborrowing shareholder in such a concern has given the proper notice, he has the right to withdraw his membership therein and receive payment for the withdrawal value of his stock in accordance with pertinent statutes and by-laws. In spite of this, it is the settled law of this state that a nonborrowing member of a building and loan association does not cease to become a member thereof and become a general creditor by giving notice of withdrawal. He simply thereby has a claim as a withdrawing member under pertinent statutes and by-laws. He never assumes the status or acquires the right of a general creditor."

■ The application of the rule to the facts of this case is clear we think. Appellees as the holders of cumulative stock, which is not paid up, have the right of withdrawal as provided by the statute, Vernon's Ann.Civ.St. arts. 881a—46, 881a—47, and bylaws. It is not an absolute right, but is subject to the statutory and by-law provisions which make such claims payable in the order of registration, and out of a certain percentage of the cash receipts of the association. Such provisions form part of the contract whereby appellees became stockholders, and likewise form a part of the contract of every similar stockholder of the association. For that reason, appellees are not in a position to prosecute a money demand for the withdrawal of the stock but must rely for payment upon compliance by the association with the pertinent withdrawal provisions.

■ We think it equally apparent that appellees were not entitled to interest on the amount of their withdrawal claim. Under the bylaws they are entitled to have their stock credited with its pro rata share of the earnings until such time as their claim is paid. Such being the contract they are not clothed with the right to assert a liquidated money demand so as to invoke the statutory provisions which allow the recovery of legal interest. Vernon's Ann.Civ.St. art. 5069 et seq.

Such we believe to be the plain effect of the holding of our Supreme Court in the Woods Case, above cited. Certainly if a withdrawing member of the class to which appellees belong "does not cease to become a member" of his association by giving the notice of withdrawal and hence "never assumes the status or acquires the right of a general creditor," then he certainly is not entitled to the remedies afforded a general creditor but must look for payment in the manner and with the limitations provided by his contract of membership.

■ As pointed out by us in the Loukas Case, cited supra, the holder of such stock who desires to withdraw is not without remedy for enforcement of his right. He can upon proper averments force compliance by the association with its contractual obligation to satisfy his withdrawal claim in the manner contracted. And, of course, in the enforcement of that right he must resort to an appropriate remedy. He cannot, as in the case of an ordinary creditor, sue on a money demand and cause execution to issue against the properties of his association.

The judgment of the trial court is reversed. And since appellees are not entitled to money judgment and that is the only relief sought, judgment is here rendered that they take nothing. This, of course, is without prejudice to any right which they may have to enforce payment in accordance with their contract.