

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

April 9, 1962

Honorable Jesse James
State Treasurer of Texas
Austin, Texas

Dear Mr. James:

Opinion No. WW-1303

Re: Whether investment moneys
received by building and
loan associations which
represent payments made
upon shares of stock or
share accounts come within
the purview of Paragraph
b of Section 1, Article
3272b, as enacted by the
57th Legislature, Third
Called Session.

We quote from your letter of March 19, 1962:

"Please advise this department by official
opinion whether investment moneys received by
building and loan associations which represent
payments made upon shares of stock or share
accounts come within the purview of Paragraph
b of Section 1, Article 3272b, as enacted by
the 57th Legislature, Third Called Session."

Section 1 of Article 3272b, Vernon's Civil Statutes,
provides:

"Duties of Depositories of Dormant or
Inactive Accounts. Every depository holding
dormant deposits or inactive accounts of
depositors or owners whose existence and
whereabouts are unknown to the depository,
shall preserve intact the deposits and ac-
counts so long as they remain in a dormant
or inactive status.

"a. The term 'depository' as used in this
Article means any bank, savings and loan asso-
ciation, banking institution or organization
which receives and holds for others deposits of
money or its equivalent in banking practice or
other personal property in this State, or in
other States for residents last known to have
resided in this State.

"b. The terms 'dormant deposits' and 'inactive accounts' mean <u>those demand, savings, or other deposits of money or its equivalent in banking practice, including but not limited to sums due on certified checks, dividends, notes, accrued interest, or other evidences of indebtedness, held by a depository for repayment to the depositor or creditor,</u> or his order, which on or after the effective date of this Article have continuously remained inactive for a period of more than one (1) year without credit or debit whatsoever through the act of the depositor, either in person or through an authorized agent other than the depository itself. 'Dormant deposits' and 'inactive accounts' lose their status as such when a deposit is made by the depositor, or a check is drawn or withdrawal is made therefrom by such depositor, either in person or through an authorized agent other than the depository itself."  (Emphasis supplied)

It should be noted that the reference to ". . . any . . . savings and loan association . . ." in Paragraph a of the statute includes building and loan association as these associations are alike in every respect, regardless of which name is used.  Art. 342-205; Art. 881a-25, V.C.S. Accordingly, any reference in this opinion to one includes the other.  By way of further predicate, we wish to point out that it is assumed the investment moneys mentioned in your request are "in this State, or in other states for residents last known to have resided in this State," as required by Paragraph a, and the investment moneys have been held for the requisite period of time to become "dormant" or "inactive" within the meaning of Paragraph b.

Adverting to the underscored language of Paragraph b, as quoted above, it is seen that our question, in essence, is whether the purchase of shares or share accounts in a savings and loan association amounts to a ". . . deposit of money . . . held by a depository for repayment to the depositor or creditor . . ." within the meaning of Paragraph b.  A savings and loan association clearly falls within the general definition of a "depository" in Paragraph a since these institutions are expressly mentioned in that paragraph and they, beyond question, at least in reference to some funds (for example: unpaid dividends), receive and hold personal property for others.  The problem arises from the use of the words "deposit" and "depositor" in Paragraph b, and the fact that investments in a savings and loan association are, in contemplation of the statutes governing these associations, not of

the same legal character as deposits in a bank. Observe for instance, Article 881a-27, V.C.S., which provides:

> "No building and loan association shall carry or have upon its books at any time any demand, commercial or checking account, or any credit to be withdrawn upon the presentation of any negotiable check or draft, and all investment monies received by any such association shall represent a payment made upon shares of stock or share accounts; provided, however, that such associations may accept money from members to be used for the purpose of paying taxes, assessments and insurance premiums on the property on which the association has a lien."

The foregoing statute obviously has the effect of precluding savings and loan associations from carrying investment moneys for shares or share accounts as "deposits", as that term is ordinarily understood in banking practice. The statute does not, however, employ the word "deposit" to accomplish this purpose.

These investment moneys are unlike bank deposits in that the withdrawal of unmatured shares or share accounts is hedged about by various restrictions, both statutory and by the by-laws of the associations, which afford the member something less than an absolute right to repayment on demand. Homestead Building & Loan Association v. Youngblood, 111 S.W. 2d 827 (Civ.App. 1937); Texas Homestead Building & Loan Association v. Kerr, 13 S.W. 1020 (Civ.App. 1890). See Articles 881a-36, V.C.S., and 881a-46, V.C.S. For example, withdrawals of funds in these associations are not allowed unless funds are available out of receipts and income for such purpose, and these associations are enjoined by statute from holding out as an inducement to buy shares that such funds may be withdrawn at a time certain upon notice of the shareholder's intention to withdraw such funds. Art. 881a-46, V.C.S. Apparently, however, matured shares may be withdrawn at any time after maturity, so long as the association is a solvent going concern. Art. 881a-48, V.C.S.

In the technical legal sense a "deposit" is a bailment of goods to be kept for the depositor without reward and to be returned when he shall require it. 26A C.J.S. 194, Deposit, Sec. 1; Bouvier's Law Dictionary, Vol. 1-A, p. 847, Deposit. If the word has this meaning in the subject statute, investment moneys for shares of stock in a savings and loan association cannot be said to fall within the purview of the statute. However, the word "deposit" has been aptly described as "a word of large and varied signification." 26A C.J.S. 198,

Depositories, Sec. 1. Taking the word, as we must, in the context of the subject statute, we believe that the Legislature intended to give it a broader meaning than is indicated by its strict legal definition.

It is a matter of common knowledge that these investments in savings and loan associations are called "deposits" by a large segment of the public. They are also often called "savings" or "savings accounts" and are referred to as such in a great deal of the advertising sponsored by savings and loan associations. The word "savings" or "savings account" connotes in common parlance a fund of money held for repayment to the person leaving such funds. Indeed, they are looked upon by the public in general as being comparable to savings accounts in banks and are, as a rule, regarded by the shareholders themselves as being withdrawable on demand. As a matter of custom and practice, the shares are vitrually payable on demand, it being the usual practice of savings and loan associations in this day and time to freely allow withdrawals of unmatured as well as matured shares. Therefore, it would not be surprising to find the Legislature referring to these investments as "deposits", at least in legislation which does not purport to be directed at savings and loan associations alone.

A further insight into the meaning of the word "deposit" in this particular context can be gained, we think, from examining the definition of the closely related word "depository" in Paragraph a. It is only logical that the Legislature would intend a "deposit" in this instance to be what is placed in a "depository", as defined in Paragraph a. It is sufficient under the definition of "depository" in Paragraph a that any personal property be received and held by a savings and loan association or banking institution for repayment to others. Nothing is said about the personal property being unconditionally repayable on demand, nor about the institution being required to return the exact amount left with the institution, nor about the institution being paid for the service, nor about the property being used or not used by the institution. Obviously, the payment of money to a savings and loan institution for shares or share accounts leaves personal property, money, with the institution to be repayed to the shareholder under certain conditions. In short, the word "depository" is not assigned a meaning which would make it a "depository" in the strict or technical and legal sense. Hence, it seems to us that the Legislature would in this same statute intend the word "deposit" to be used in the same broad sense.

Further, the use of the word "account" in Paragraph b also indicates that moneys paid to a savings and loan association for shares or share accounts are intended to be covered by Article 3272b. The federal statutes providing for the

insurance of these funds by the Federal Savings and Loan Insurance Corporation employ the word "account" in referring to shares in a savings and loan institution. 12 U.S.C.A. 1724. And, the Texas statutes also employ the word "account" in referring to investments in savings and loan associations. Art. 881a, V.C.S.

The view that the word "deposits" includes the liabilities of a savings and loan institution on withdrawable stock, whether running or paid up, is not without precedent. In Merchants & Mechanics Federal Savings and Loan Association v. Evatt, 138 Ohio St. 457, 35 N.E.2d 831 (1941), it was held that the word "deposits" in the Ohio statute placing a tax on deposits of financial institutions included payments for stock in the association.

For the foregoing reasons, your question is answered in the affirmative.

## SUMMARY

Investment moneys received by a building and loan association which represent payments made upon shares of stock or share accounts come within the purview of Paragraph b of Section 1, Article 3272b, V.C.S.

Very truly yours,

WILL WILSON
Attorney General of Texas

By Henry G. Braswell
Assistant

HGB:dsd

APPROVED:
OPINION COMMITTEE
W. V. Geppert, Chairman
Morgan Nesbitt
Dudley McCalla
Frank Booth

REVIEWED FOR THE ATTORNEY GENERAL
BY: Houghton Brownlee, Jr.