BARBARA LAUBHAN, ADMINISTRATRIX, ET AL. V.
PEORIA LIFE INSURANCE CO.

No. 6743.  Decided February 24, 1937.
Rehearing overruled March 31, 1937.

*E. C. Gray,* of Higgins, for appellant.

*Morgan, Culton, Morgan & Britain,* of Amarillo, for appellee.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

This is a case upon certified questions. The certificate reads:

"In the year 1916 Alex J. Laubhan and his wife, Barbara Laubhan, one of the appellants herein, contracted to purchase the north half of Section 1136, agreeing to pay therefor a consideration of $9,723.00. About $500.00 of this was paid in cash and the balance was payable in annual installments of $1,152.88 each. A deed was to be delivered upon payment of all installments. Laubhan and wife entered into possession of this land and established a homestead on the east 200 acres of same and erected valuable improvements thereon. Thereafter, in 1926, the S. W. 1/4 of Section 1153, adjoining the above, was purchased by Alex Laubhan for a recited consideration of $4,052.12, all cash. Subsequently thereto and prior to 1929, Laubhan purchased the West 1/2 of Section 12, distant from the above lands about 7-1/2 miles, and executed vendor's lien notes. The exact consideration paid seems unnecessary to state. In 1926, about the time of the maturity of the last installments due on the N. 1/2 of said Section 1136, Laubhan executed a note for the sum of $8,000.00, payable to Wm. L. Sharp, and a trust deed to secure same upon the 480 acres of land first described above. This trust deed contains the following statement:

" 'The legal title to the land above described is at this time vested in Nelson W. Willard, and the above named mortgagors are in possession of said lands under and by virtue of a contract to purchase same, and they have heretofore paid a portion of the purchase price thereof; but mortgagors represent that there is still owing on said contract price of said lands a sum in excess of the debt hereby secured, and the note hereinafter described is given for moneys which are to be applied by the mortgagee, Wm. L. Sharp, upon the said purchase price, and said Sharp is hereby authorized and directed to pay to said Nelson W. Willard, his heirs or assigns, the proceeds of the loan now being made mortgagors by said Sharp and evidenced by the note hereby secured; and it is agreed and intended that said Sharp shall have a first lien upon the whole of the above described lands to secure the purchase money advancement so made by him.'

"Nelson W. Willard appears at that time to have been the holder of the legal title to said 480 acres of land and a draft for $10,870.89 was forwarded to said Willard and cashed by him. The sum of $3,976.16 was paid by Laubhan in cash to Sharp and Wm. L. Sharp & Co. paid out other amounts due

on said land, including an amount due the State of Texas for original purchase money necessary to secure a patent. After the above transaction the said Nelson W. Willard delivered a deed to Laubhan for the said N. 1/2 of Section 1136, reciting a cash consideration of $9,723.00, and another deed to the said S. W. 1/4 of Sec. 1153, reciting a cash consideration of $4,052.12. The said note for $8,000.00, together with the lien and all title in the aforesaid land securing said debt, passed by subsequent assignments to the Commerce Farm Credit Co. on May 13, 1929. On Feb. 14, 1929, Laubhan made an application to the said Commerce Farm Credit Company for a loan of $13,000.00 to be secured by a blanket lien on all of the land mentioned above, consisting at that time of about 807 acres. This application contained the statements:

" 'Deed of trust to Wm. L. Sharp, Chicago, Ill., on 480 acres in amount of $8,000.00; $6,000.00 vendor's lien notes held by A. W. Kincade on 320 acres.

" 'My homestead is worth $15,000.00, but encumbered for $8,000.'

"Said loan was consummated and the trust deed was executed to secure three notes aggregating $13,000.00 and secured by a lien on the aforesaid 807 acres of land. This trust deed contained the following statements:

" 'The note secured hereby is given for money advanced by Commerce Farm Credit Company to take up and discharge the balance of an indebtedness against the land herein conveyed, partly evidenced by the balance of the principal and interest due on a note for the principal sum of $8,000.00, dated June 24th, 1926, due June 24, 1933, made by Alex J. Laubhan and Barbara Laubhan, his wife, payable to the order of Wm. L. Sharp, and fully described in deed of trust covering the SW 1/4 of Section No. 1153 and the North 1/2 of Section No. 1136, in Block 43 (being a part of the land conveyed by this deed of trust) from Alex J. Laubhan and wife, Barbara Laubhan, to R. O. Renfrew, Trustee, as shown by Book 38, page 290, of the Deed of Trust Records of Lipscomb County, Texas; and partly evidenced by the balance of the principal and interest due on five vendors lien notes for the principal sum of $1,000.00 each, dated January 24, 1927, due July 15, 1930, 1931, 1932, 1933 and 1934, respectively, made by Alex J. Laubhan, payable to the order of A. W. Kincade, and being Notes Nos. 4, 5, 6, 7 and 8 of a series of eight vendors lien notes * * * fully described in deed from A. W. Kincade and wife, Mary Josephine Kincade, to Alex J. Laubhan, conveying the West half of Section No. 12 in Block No. 10 * * * and it is understood and

agreed that said Commerce Farm Credit Company shall be, and is hereby subrogated to all of the rights, titles, liens, remedies and equities now existing to secure and enforce the payment of said notes, all of which are extended and continued with the terms and provisions of this instrument.'

" * * *

" 'That the Commerce Farm Credit Company and its assigns, as further security for the payment of the debt hereinbefore described, shall be subrogated to the rights of the holders of any and all prior liens and incumbrances on said real estate which may be paid out of the proceeds of this loan, even though said liens and incumbrances may be released of record.'

"This indebtedness, lien, and all interest in the land held by the mortgagee subsequently passed by assignments to the appellee herein.

"About September 15, 1932, Alex Laubhan died intestate. On December 16, 1932, Barbara Laubhan, his wife, and one of the appellants herein, applied to the Probate Court of Lipscomb County to be appointed as administratrix of his estate. She was so appointed and duly qualified as such.

"Thereafter and on the 23rd day of February, 1933, in response to a petition filed by her, the County Court of Lipscomb County entered an order setting aside all of the E. 200 acres of the N. 1/2 of Section 1136 above described, to her and her children as a homestead, free and clear of all existing liens against same. It is conceded that this order was entered without any notice to appellee and without its knowledge and since it attempted to cancel what the Trial Court correctly decided was a vendor's lien against said homestead, it was, we think, void and will not be further noticed herein.

"A short time thereafter appellee duly filed its claim for the unpaid balance of its note of $13,000.00 with the said administratrix, and as part of its said claim made oath as follows:

" 'Affiant further states that this claim is filed in accordance with subdivision "B" of Article 3515a of the Revised Civil Statutes of Texas, 1925, and it is desired that this claim be allowed, approved and fixed as a preferred debt and lien against the specific property above described and paid according to the terms of the contract which secures the lien as aforesaid.

" 'In this connection, affiant further says that the notes or bonds and the lien above described are a first and superior claim and lien against the specific property hereinabove described, each of which notes or bonds and lien is owned by Peoria Life Insurance Company, of Peoria, Illinois.'

"The administratrix, on the 4th day of May, 1933, approved

appellee's claim as a money demand against the estate, but rejected its lien claim against the said 200 acre homestead, her said rejection being in part, in the following language:

" 'Said claim carries with it a deed of trust, and said deed of trust is valid as to all the land that is described in said deed of trust, except the following described land situated in the County of Lipscomb, State of Texas, more particularly described as follows:

" 'All of the Northeast Quarter of the East one-fourth of the Northwest Quarter of Section Eleven Hundred Thirty Six (1136) in Block No. Forty-Three (43) located by virtue of Certificate No. 47/6729 issued to the H & T C Ry Co. containing two hundred acres of land.'

"Within ninety days thereafter appellee filed its suit in the District Court of Lipscomb County, Texas, against the administratrix and the wife and children of deceased, to establish its claim as a preferred debt and lien against the estate of Alex Laubhan, deceased. Upon the trial the District Court impliedly found, and we think upon sufficient testimony, that appellee had a vendor's lien against the homestead in question and entered judgment allowing appellee's claim and approving and fixing same as a preferred debt and lien, but the original debt being for $13,000.00 against about 807 acres of land and the original lien being for only $8,000.00 against the 480 acres, which included the homestead, it allocated to said 480 acres 8/13ths of the total and allowed the claim and fixed it as a preferred debt and lien against the original 480 acres first above mentioned for 8/13ths of the total amount of the claim. It ordered its judgment certified to the Probate Court of Lipscomb County for observance.

"It will be observed that the District Court did not foreclose any lien, nor order any property sold.

"From this judgment appellants appealed. Many contentions were made in the District Court, but the controlling one, as we view it, is the contention of appellants that the District Court of Lipscomb County had no jurisdiction to enter the aforesaid judgment.

"It is the claim of appellants that the Probate Court of Lipscomb County alone had jurisdiction of appellee's cause of action, under the rule announced in Investment Company v. Jackman, 77 Texas 622, 14 S. W. 305, and Ralston v. Stainbrook, 187 S. W. 413.

"Appellee contends: First, that said District Court had original jurisdiction of its cause of action under numerous authorities, of which the case of Gregory v. Ward, 118 Texas 526, 18

S. W. (2d) 1049, is typical, and second: if mistaken in the above, that the terms of Art. 3515a (Acts 42nd Leg., p. 79) have so changed the law with reference to filing claims against estates, as to give the District Court jurisdiction, where as here its lien was rejected by the administratrix and that the rule announced in Investment Co. v. Jackman, supra, has no application under the particular facts of this case, particularly in view of the language of Art. 3515a, supra.

"The last contention apparently involves an extended and original construction of a new statute.

"Being unable to agree, we deem it advisable to certify to Your Honorable Body the following two questions:

"1. Did the District Court of Lipscomb County have original jurisdiction of appellee's cause of action without a previous claim having been filed with and rejected by the administratrix, under the facts recited above?

"2. If not, did such Court have jurisdiction after appellee's claim for a preferred lien under Art. 3515a had been rejected by the Administratrix, as set out above?"

Decision of this case has been deferred pending determination of the question presented in Wyatt et al. v. Morse, Administrator, et al., 97 S. W. (2d) 336, in which writ of error was granted while this case was under submission in the Commission. Upon granting the writ the Wyatt case was advanced and set for hearing before the Court and Commission en banc, as its decision involves consideration for the first time by this Court of the Act of 1931, now incorporated as Article 3515a in Vernon's Texas Statutes, 1936. G. L. 42d Leg., Chap. 52, pp. 79-80.)

The Wyatt case has been this day decided, 129 Texas 199, 102 S. W. (2d) 396, and while the question there presented was not one of jurisdiction, what is stated in its decision will be controlling as to the purpose and interpretation of the Act. The Act in question has been set out in the Wyatt case and in the interest of brevity will not be incorporated in this opinion.

We have concluded that both questions must be answered in the negative, but with a qualification of the answer of the first that upon facts set forth in an amendment of the company's petition as hereinafter indicated, the district court would have jurisdiction in the matter of establishing its claim subject to classification under the probate procedure existing at the time the contract was executed. The questions will be discussed in conjunction.

It will be noted that the first question certified assumes that the company's claim was not rejected by the administratrix

under the facts recited in the certificate. This assumption is in keeping with the settled law as it existed prior to 1931. Art. 3522, R. C. S. 1925; Western Mtge. & Inv. Co. v. Jackman, and Ralston v. Stainbrook, supra. The article cited reads:

"When a claim for money against an estate has been rejected by the executor or administrator, either in whole or in part, the owner of such claim may, within ninety days after such rejection, and not thereafter, bring suit against the executor or administrator for the establishment thereof in any court having jurisdiction of the same."

In the case first cited Jackman, the administrator, endorsed upon the claim filed with him that he had "examined and allowed (it) to be paid in due course of administration, but the lien given on the 200 acres of land set apart as a homestead is rejected, * * *." The claimant deeming this such a rejection of the claim as to authorize suit for its establishment, filed an independent action in the district court for this purpose. Judge GAINES after quoting the statute above set out, speaking for the Court, says:

"If the words 'claim for money' mean not only the debt but also any lien that may exist for securing its payment, then it would seem that the rejection of the lien, either in whole or in part, would authorize the bringing of an ordinary action for its establishment in any court having jurisdiction under the Constitution. But to our minds these terms exclude the idea that the lien was intended to be embraced. A claim for money means literally the claim that a debt exists; a claim for a lien is something more—a claim not only that there is a debt, but also that a lien exists for its enforcement. The lien is no part of the debt; it is a mere incident of the claim for the money.

" * * * *

"Our opinion is that in passing upon a claim the administrator is authorized to pass upon the question of indebtedness only, and that the power of classifying the claims, including those for the payment of which a lien upon property is asserted, devolves upon the court.

"We conclude that the claim for money against the estate having been allowed by the administrator, the plaintiff should have proceeded in the County Court to have its claim approved and to enforce its lien, and that the District Court did not have jurisdiction of the cause. * * *."

1  The duty of passing on the validity of the lien asserted by the claimant as security for his debt, was not imposed by law

upon the administrator prior to 1931. It was not necessary in presenting such a claim for the claimant to refer to his lien, though regarded as the better practice to advise the administrator of its existence. Cannon v. McDaniel, 46 Texas 303. The claim was acted upon under the statute as a demand for money, and the lien was regarded as incidental to the debt. In 1931 however the Forty-second Legislature by enactment of what is now Article 3515a Vernon's Texas Statutes, 1936, made it the duty of the administrator by the provisions of subsection (b) of Section 1 of the article, not only to allow or disallow the claim as a money demand, but also to pass upon the validity of the lien. Such is made his duty in the event the claimant elects to proceed for the collection of his debt against the specific property securing its payment rather than against the entire estate of the deceased, as is pointed out in the Wyatt case, supra. Under the broadened scope of the duty of the administrator in acting upon a claim presented to him in accordance with the provisions of subsection (b), a denial of the validity of the lien constitutes a denial in part of the claim presented, and amounts in law to such a rejection of the claim as to authorize its establishment by an independent suit in a court of competent jurisdiction. In the face of the rejection of the claim, had the provisions of Article 3515a been applicable, no court other than the district court in which the suit was filed would have been available for establishing the claim as a preferred debt and lien against the specific property securing the debt. The Legislature in broadening the scope of the administrator's duty in the manner pointed out, broadened also the grounds upon which the claimant could invoke the jurisdiction of the district court. The Legislature made the change pointed out in the light of the holding in the Jackman case and subsequent cases following its holding, and doubtless did so designedly.

It is obvious from what has been stated that it would be necessary to answer the second question in the affirmative, if the provisions of subsection (b) of Article 3515a could be given application. However, we have concluded that the provisions of this subsection are without application for the reason that they can not be given a retroactive effect.

It appears from the recitations of the certificate that the mortgage contract was execued in 1929, about two years before the Act of 1931 became effective. Under the probate procedure as it then existed there was no remedy whereby the holder of a secured claim could proceed in the collection of his debt after the decease of the mortgagor against the specific property securing its payment, such as the Legislature has sub-

sequently provided by the terms of Article 3515a. Wyatt et al. v. Morse, Administrator, et al., supra.

**2** One of the implied obligations of the mortgage contract inherent therein at the time of its execution because of the procedure that then existed for its enforcement through the probate court, was the right of those obligated to its performance to have the claim based thereon when established in due course of administration, classified and fixed as one of the third class. Under the procedure then in force, funeral expenses came first, and court costs and administration expenses came next. Art. 3531, R. C. S. 1925. If claims for funeral expenses were not presented within sixty days, then their payment was postponed to payment of the widow's and children's allowance. Art. 3533, R. C. S. 1925. See also Article 3483, R. C. S. 1925. The right to have the contract enforced after the decease of Laubhan with payment of the debt postponed subject to the foregoing allowance, claims and mode of collection, was a valuable right incorporated in the contract by force of law at the time of its execution. To give force and effect to the 1931 procedure provided by the Legislature would take away such right by permitting the company to elect to proceed in probate in the collection of its debt in such manner as to have its claim fixed as a preferred debt and lien against the specific property securing the debt. Wyatt et al. v. Morse, Administrator, et al., supra. Clearly, this would result in violation of contract rights protected by the organic law against impairment. As stated in Langever v. Miller, 124 Texas 80, 76 S. W. (2d) 1025, 26 A. L. R. 836:

"We do not gainsay the proposition that the Legislature may change judicial methods and remedies for the enforcement of contracts. That is a rule of universal acceptation, and is well within the terms of our own organic law providing for a judicial system and authorizing the Legislature to 'pass such laws as may be necessary to carry into effect the provisions of this Constitution.' (Constitution, Art. 3, Sec. 42, and Article 5.) This power, however, to 'pass such laws,' etc., is subject to the limitations contained in the Bill of Rights, Section 16, Art. 1, of which prohibits the enactment of laws impairing the obligation of contracts.

" \* \* \*

" \* \* \* It seems to us that the act before us does in fact operate upon and impair the 'obligation' of the contract in that it nullifies that portion of the contract, read in the light of the then existing statute, which entitled the mortgagee to a defi-

ciency judgment. But, if the statute be regarded as one which merely operates upon the remedy or remedies for the enforcement of the contract, it is obvious that it abridges the rights of the mortgagee resulting from the stipulations in the agreement in such manner as to make the contract less valuable, and denies him lawful remedies which existed when the instrument was executed without substituting therefor others equally valuable and equally effective."

In the case quoted from, the amendment of Article 2218 R. C. S. 1925, relating to the remedy of collecting a debt by foreclosure, if given effect, would have impaired the right of the holder of the deficiency judgment in question to collect it in full. The procedure attempted under the amendment was declared to be violative of the right of the judgment creditor vested in him at the time of taking the judgment to seek satisfaction thereof out of "any other property of the judgment debtor" as provided in the original article.

The general statement in Farmer's Life Insurance Company v. Wolters, (Com. App.) 10 S. W. (2d) 698, to the effect that the implied obligation of the contract as to the remedy for its enforcement, is such remedy as may exist at the time it is sought to be enforced rather than at the time of the execution of the contract, appears to be out of harmony with the law as declared in the Langever v. Miller case, supra, and followed herein. To the extent that it conflicts with the holding in the Langever case it is overruled. See also Woods v. Wichita Falls Building & Loan Association, 128 Texas 1, 96 S. W. (2d) 64.

3 It appears from what has been stated that the approval by the administratrix of the claim as a money demand and her denial in part of the lien asserted, does not amount in law under the former procedure in probate, which is here applicable, to such a rejection of the claim as authorizes suit in an independent action for its enforcement. There is an exception to this rule to the effect that if a cause of action such as is here in question involves some legal or equitable right connected with the claim for the adjudication of which the powers of the probate court are inadequate to grant the claimant the full relief to which he is entitled, the district court has jurisdiction in an original action for such purpose. Gregory v. Ward, supra; George v. Ryon, 94 Texas 317, 60 S. W. 427; O'Neil et al. v. Norton et al., (Com. App.) 29 S. W. (2d) 1060.

The exception pointed out has application to the facts of this case presented by the company under pleadings alleging the claim has been filed under the applicable procedure, since

the certificate discloses that it is necessary to adjust equities between the homestead and other lands involved, and that issues of estoppel with respect to the validity of the lien against the homestead are involved.

The first question should therefore be answered that the court has jurisdiction to hear the company's cause of action pleaded in accordance with the former procedure, but with this qualification; that while the court has jurisdiction of an action so pleaded to establish the claim, it is without power to establish it as a preferred debt and lien as sought in the present action under the provisions of subsection (b) of the act in question. The second question is answered in the negative.

Opinion adopted by the Supreme Court February 24, 1937.

Rehearing overruled March 31, 1937.