**BANKERS LIFE CO. v. BALL et al.**

Nos. 13908, 13909.

Court of Civil Appeals of Texas. Fort Worth.

May 12, 1939.

Rehearing Denied June 23, 1939.

**806**

Coker, Rhea & Vickrey, of Dallas, for appellant.

Benson & Benson and Donald & Donald, all of Bowie, for appellee.

BROWN, Justice.

This is the second appeal of the suit reported in Tex.Civ.App., 103 S.W.2d 1111, and we refer to our opinion disposing of the first appeal for a history·of the case and the issues disposed of on that appeal.

As shown in that opinion, the judgment of the trial court, in favor of the plaintiff, Bankers Life Company, for debt and fore-closure, was reversed, because of the show-ing made that the suit was instituted before the maturity of the debt. The case was then remanded, as shown in the opinion above cited.

This court refused to discuss some of the assignments of error presented in ap-pellant's briefs, wherein the question of res adjudicata was raised, for lack of a sufficient basis therefor in plaintiff's plead-ings in the trial court, but with the further observation that appellant would have the right to present that defense by proper pleadings on another trial.

An application for writ of error from that decision·was dismissed by our Su-preme Court.

After the remand of the case, the de-fendants filed amended pleadings, in which they presented not only the defense of res adjudicata, but also challenged the juris-diction of the District Court to determine the controversy.

As shown in the opinion, we held that W. T. Ball, as community adminis-trator of the estate of himself and his de-ceased wife, Mrs. Luella Ball, was author-ized to fix a valid lien upon the entire com-munity estate for the $33,000 note on which the suit was instituted, even though the note and lien given to secure the same were in whole or in part· for his own in-dividual benefit, and not for the purpose of discharging community debts against the estate. That conclusion is not only the law of this case and controlling in the trial court in the second trial, but was estab-lished by an unbroken line of decisions of this State, cited in the opinion.

The will of W. T. Ball was dated Oc-tober 4, 1920, which was about four years before the death of Mrs. Luella Ball, his wife. It embodies these provisions:

"First: I direct that all my just debts and funeral expenses be paid by my ex-ecutors as soon after my decease as pos-sible.

"Second: I direct that my executors pay the debts of my son-in-law, Charlie Brown, which he owes to C. H. Boedeker or the City National Bank of Bowie, Texas, I being responsible for the same but have not signed the·notes.

"Third: I give and bequeath to my son, W. D. Ball, One ($1.00) Dollar, and to each of my daughters, Etta Lee Ball Brown, Sallie Ball Harvey, Edith Ann Ball and Georgia Ella Ball, One ($1.00) Dollar each.

"Fourth: I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal, of every kind whatsoever and wheresoever situated, to my wife, Luella Ball, absolutely and in fee simple.

"Fifth: After all the above debts are paid, should my wife desire she can divide the property, that to be left entirely to her.

"Sixth: My one-half interest in the property of W. T. Ball and W. D. Ball, who have a partnership, I want W. D. Ball my son to have the privilege of buying, my one-half in preference to anyone else.

"Seventh: I request that each of my daughters join and help my wife and son W. D. Ball, in seeing that a success is made out of my estate.

"Eighth: At my wife's death, I wish and want that all the property be equally divided between my five children above mentioned, share and share alike.

"Ninth: I nominate and appoint C. H. Boedeker and W. D. Ball, my son, executors of this will, without bond."

The will was duly probated, and W. D. Ball alone qualified as executor. After his qualification, he filed an inventory and appraisement, which was duly approved on October 9, 1929.

The property inventory was as follows:

"Separate property of said Deceased. Cash on hand, $2317.00.

"Community Property. (Here follow descriptions of the different tracts of land which made up the 2555.5 acres described in the deed of trust executed by W. T. Ball, as community administrator, for the $33,000.00 on which the suit was instituted by the plaintiff.)

\* \* \* \* \* \*

"List of Claims.

"Community Property. Amount due Loan Company, secured by mortgage on land $26,000.00

"Note due Elbridge Ball 5,000.00

"Note due W. A. Wells 5,000.00

"(The above debts are due by the community estate, and the estate of said W. T. Ball is only chargeable with one-half of same).

"I do solemnly swear that the foregoing inventory and List is a full and complete inventory and list of the property and claims of W. T. Ball, deceased, that have come to my knowledge. (Signed) W. D. Ball."

After W. D. Ball had qualified as executor of the will and the inventory and appraisement had been approved by the Probate Court, plaintiff, Bankers Life Company, presented to him for allowance its claim for the balance due and owing on the $33,000 note theretofore executed by W. T. Ball, as community administrator, together with a claim of the mortgage lien given as security therefor, after allowing a credit thereon of $6,500, together with a claim of first mortgage lien on 2555.5 acres. The executor endorsed his allowance of the claim in full. The Bankers Life Company then presented the same to the Judge of the County Court, who, on January 28, 1931, endorsed his approval thereof in full as a claim of the first class. The holder then filed the same with the clerk of the court.

Thereafter, on May 6, 1932, the Bankers Life Company filed its application to the Judge of the County Court for an order directing the executor to sell the land described in the application, in its entirety, for the purpose of payment and discharge of the debt. The application embodied averments in substance that the claim had been duly allowed by the executor and approved by the County Judge; that it was for a balance of $27,500, due on the $33,000 note executed by W. T. Ball, as community administrator of the estate of himself and Mrs. Luella Ball, deceased, and secured by a first deed of trust lien executed by him, as such, and also individually on the 2555.5 acres in controversy.

After prior statutory notice given of the hearing of the application, the same was heard and an order was entered, on July 7, 1932, reciting that the claim was for a deed of trust lien on the property, which was described in the said deed of trust; that the same had been duly allowed and placed on the claim docket and approved by the county judge, followed by these provisions:

"And it appearing to the court that W. D. Ball, the Executor of said estate, has been duly cited and served to appear and answer herein, and that notice of said application has been duly issued and posted, as required by law, and the court, having heard such application and the evidence thereof, finds that W. T. Ball, at the time of his death, owned an undivided one-half interest in the said 2176 acres, and that it will be to the best interest of the estate that said sale be made, at public auction, to the highest bidder for cash.

"It is therefore ordered by the court that the said undivided one-half interest, being all of the interest of W. T. Ball, deceased, in said 2176 acres, be sold by W. D. Ball, the Executor of said estate, at

public auction, to the highest bidder for cash, on the first Tuesday in August, 1932, * * *", and requiring the executor to execute another bond in twice the amount to be realized from the sale.

On August 17, 1932, the executor filed his report of sale made, reciting that in obedience to the order of sale, he had sold W. T. Ball's interest in 2176 acres at public auction to the Bankers Life Company for $6,000 cash.

On August 23, 1932, the county court entered an order approving that report of sale and ordering the executor to execute to the Bankers Life Company a deed to the property so purchased.

On August 27, 1932, the deed so ordered was executed and delivered to the Bankers Life Company, and in which it was recited that the property sold was "an undivided half interest, being all the interest of W. T. Ball, deceased, in and to the 2555.5 acres in controversy, less 379.5 acres theretofore sold by W. T. Ball himself."

No appeal was taken by the Bankers Life Company to the District Court from the order of the county court directing the sale of only one-half interest in the property instead of a sale of the entire title, as prayed for.

After remand of the case for another trial, plaintiff filed its first amended petition, alleging the execution by W. T. Ball of the $33,000 note and deed of trust securing it, as community administrator, and individually; that the property covered by the deed of trust belonged to the community estate of W. T. Ball and wife, Luella Ball, deceased; that the $33,000 note was in part for an extension of prior indebtedness secured by valid liens on the same property; due allowance, approval and filing of its claim with W. D. Ball, executor; application for sale by the executor; and granting of same by the court for only one-half interest in that property and deed made in accordance therewith, and praying for judgment against the heirs of Mrs. Luella Ball, deceased, for the balance due on the $33,000 note, with foreclosure of the mortgage lien on the half interest in the property in controversy, which they had inherited from their mother, Mrs. Luella Ball, who had died intestate. There was an alternative prayer that in the event of a denial of right to judgment for the debt, then for a decree establishing and enforcing the lien on said half interest, and that same be sold as under execution, to satisfy such lien, and that such judgment be certified to the Probate Court of Montague County for observance.

The trial of the case was without a jury and judgment was rendered in favor of the defendants. Plaintiff has appealed. The trial court filed findings of the proceedings had in the county court, related above. And one of the conclusions of law reached was that the county court had exclusive jurisdiction to determine the merits of plaintiff's claim of lien on the defendants' half interest in the real estate in controversy inherited by them from their mother, Mrs. Luella Ball, deceased, which was her community half of the property.

There was no allegation in plaintiff's petition that the county court was without jurisdiction to determine the validity of the alleged lien on defendants' half of the property inherited from Mrs. Luella Ball, for the balance due on the $33,000 note in suit, and to have it sold for satisfaction of that debt. Nor indeed could that be said. Therefore, authorities cited by appellant to support the jurisdiction of the District Court to adjust equities of claimants in property being administered in the Probate Court, which that court is without jurisdiction to determine, and its decision to be certified to the Probate Court for its observance, have no proper application here. Following are some of the authorities cited: Lauraine v. Ashe, 109 Tex. 69, 191 S.W. 563; Gregory v. Ward, 118 Tex. 526, 18 S.W.2d 1049; Laubhan v. Peoria Life Ins. Co., 129 Tex. 225, 102 S.W.2d 399.

Article 3290, Chapter 1, Title 54, Vernon's Texas Civil Statutes, reads: "The county court shall have general jurisdiction of a probate court. It shall probate wills, grant letters testamentary or of administration, settle the accounts of executors and administrators, and transact all business appertaining to the estates of deceased persons, including the settlement, partition and distribution of such estates."

Chapter 18 of the same Title relates to claims against an estate. Vernon's Ann. Civ.St. art. 3502 et seq. It requires presentment of such to the executor or administrator for his allowance or rejection; filing of same with the clerk of the county court, if allowed; action thereon by the county judge, either approving or rejecting them.

Article 3522: "When a claim for money against an estate has been rejected by the executor or administrator, either in whole or in part, the owner of such claim may, within ninety days after such rejection, and not thereafter, bring suit against the executor or administrator for the establishment thereof in any court having jurisdiction of the same."

Article 3525: "The action of the court in appproving or disapproving a claim shall have the force and effect of a final judgment, and when the claimant, or any person interested in the estate, shall be dissatisfied with such action, he may appeal therefrom to the district court, as from other judgments of the county court rendered in probate matters."

Chápter 21 vests in the county court power to order sale of property belonging to an estate for the purpose of discharging liens against it. Vernon's Ann.Civ.St. art. 3552 et seq.

 It is a settled rule of decisions cited in our opinion on the former appeal that when a survivor takes over community property under order of the county court, in accordance with the governing statutes, the bond he executes takes the place of the property, and the heirs of the deceased spouse must look to the bond for loss of the half interest they inherit from the deceased spouse, resulting from any action by the surviving spouse. And the statutory power to dispose of the entire property free of claims of such heirs necessarily includes the power to encumber it with a valid lien.

 The mortgage lien given by W. T. Ball, as community administrator, against the entire community interest in the property in controversy, and also his individual liability on the note to secure which the mortgage was executed, continued in full force after his death, and subject to the jurisdiction of the county court in the administration proceedings upon his estate. Such jurisdiction included power in that court to order sale of the entire community interest of W. T. Ball and Mrs. Luella Ball in the land in controversy, to satisfy the note sued on here, to the exclusion of rights claimed therein by defendants of heirship to their mother's half interest therein.

This conclusion is supported by the decision of the Commission of Appeals in Lovejoy v. Cockrell, reported in 63 S.W.

2d 1009. In that case it appeared that John Lovejoy acquired a great deal of real and personal property which was community property of himself and wife, Mary C. Lovejoy. He died, leaving a will which was duly probated. The first two provisions of the will read:

"1. I direct that all my just debts and funeral charges by my executor hereinafter named be paid out of my estate as soon after my decease as shall by him be found convenient.

"2. I give and bequeath to my wife, Mary C. Lovejoy, all my household goods and furniture. All the property which I own is community and my wife being one-half owner of the community estate I am only disposing of my community interest in our estate."

Then follow provisions devising to his sons and daughters named all property owned by him at the time of his death, and appointing Presley K. Ewing his independent executor, and without bond. For the purpose of paying community debts, the executor sold various parcels of community property, including an undivided ½ interest in a 5-acre tract of land sold to Cockrell, conveying full title thereto. The suit was instituted by Mrs. Mary C. Lovejoy, the surviving wife of the testator, to recover of Cockrell title to her community interest in the undivided ½ interest in said 5-acre tract. The trial court rendered judgment in her favor, but the Court of Civil Appeals reversed that judgment and rendered judgment in favor of Cockrell, which was affirmed by the Supreme Court, in accordance with the conclusions of the Commission of Appeals. In that opinion this was said: "The community property of a husband and his wife is chargeable with the debts of the husband. Respecting the administration of the estate of a deceased husband, for the purpose of paying his debts which are chargeable to the community, the community property, as an entirety, is regarded in law as belonging to his estate, except in respects not pertinent to this case. While such administration of the estate of the deceased husband is pending in the probate court, the entire community property is subject to the jurisdiction of that court. This jurisdiction of the probate court is exclusive. Neither the surviving wife, as such, has authority under the statutes, to sell community property for the purpose of paying community debts of her husband, nor, in

case she do not survive, does that authority appertain to the administration of her estate. Authority in that respect appertains exclusively to the pending administration of the estate of the deceased husband. [Citing many decisions.]"

The fact that the debts for which the property was sold ·by the executor in that case were community debts, and therefore chargeable against the property, is unimportant as a distinguishing factor from this case, because, as is well settled by the authorities cited, the mortgage executed by W. T. Ball, as community administrator, was likewise a valid lien against the community estate in its entirety.

Accordingly, we conclude the trial court did not err in concluding that the District Court was without jurisdiction to determine the merits of plaintiff's suit.

It is a well settled principle that a judgment of a court of competent jurisdiction, allowing a part only of the relief prayed for, on a demand that is not susceptible of separation into different causes of action, is a bar to a further recovery on that portion of the demand that was not allowed.

It is our conclusion that the order of the county court in the administration proceedings made on the 7th day of July, 1932, directing the sale of only ½ of the property in controversy, was a final disposition of the entire claim of right on the part of the Bankers Life Company to have the other ½ of the property sold to satisfy the note, the county court having exclusive jurisdiction to determine that matter, and its judgment thereon being un-appealed from and having become final, under the very terms of our statutes, above noted. And the trial court reached that conclusion as an additional ground for denying plaintiff any relief.

This conclusion is in accord with the well settled principles relating to the question of res adjudicata.

We shall cite only a few of the cases announcing that principle, as follows: Vieno v. Gibson, 85 Tex. 432, 21 S.W. 1028; Craig v. Broocks, 60 Tex.Civ.App. 83, 127 S.W. 572, error refused; Lovejoy v. Cockrell, Tex.Com.App., 63 S.W.2d 1009 cited above; Carter v. Bacle, Tex.Civ. App., 94 S.W.2d 817, and authorities there cited.

After a remand by this court of the case above discussed, the plaintiff, on the 17th day of June, 1937, which was approximately five years after the county court ordered ½ of the property in controversy sold to pay the note now in suit, filed another application in the county court to sell the remaining ½ interest in the property on the theory that that ½, which was the interest of Mrs. Luella Ball, in the property, had never been sold, and was subject to the lien.

The county court refused to grant that application, on the principles of res adjudicata. Plaintiff appealed from that order to the District Court, and from a judgment by the District Court to the same effect an appeal has been brought to this court. On motion of counsel, that appeal has been consolidated with the appeal discussed above, and we have reached the opinion that our conclusions, heretofore expressed, with reference to estoppel, as applicable to the case first discussed, have the same application in the appeal from the latter judgment, and that the judgment of the trial court in the latter case was correct, by reason thereof.

Accordingly, all assignments of error presented by appellant in both cases stated are overruled, and the judgments in both those cases are affirmed.

SPEER, J., concurring.

DUNKLIN, C. J., being the holder of a paid-up policy of life insurance with Bankers Life Company, recused himself from participation in this appeal.