**LAUBHAN et al. v. ALLIANCE LIFE INS. CO.**

No. 5063.

Court of Civil Appeals of Texas. Amarillo.
Oct. 16, 1939.

E. C. Gray, of Higgins, for appellants.

Morgan, Culton, Morgan & Britain, of Amarillo, for appellee.

FOLLEY, Justice.

This case has quite a history in this court and in the Supreme Court of Texas. The cause first reached here on an appeal from the District Court of Lipscomb County, Texas, in which the Peoria Life Insurance Company was the plaintiff in the trial court and the defendants were Barbara Laubhan, individually and as administratrix of the estate of her deceased husband, Alex J. Laubhan, and the children of the Laubhans. The former appeal involved the authority of the district court

to establish a lien upon the homestead of the Laubhans, the estate of the deceased being in the process of administration in the probate court. This court submitted the controversy to the Supreme Court of Texas upon certified questions which were answered in Laubhan et al. v. Peoria Life Ins. Co., 129 Tex. 225, 102 S.W.2d 399, in which opinion will be found a discussion of the jurisdiction of the district court under the facts that existed in the former trial of this case. We refer to such opinion for a statement of the basic facts which still obtain in the present record. However, for the purpose of a true appraisal of the present status of the case, we deem it expedient to restate the history and background of the present litigation.

In 1916 Alex J. Laubhan contracted with Thomas C. Spearman of Cook County, Illinois, to purchase the N½ of Section 1136, Block 43, in Lipscomb County, Texas, consisting of 324 acres of land. The consideration was $9,723. Of this amount $500 was paid in cash, and the balance was payable in annual installments of $1,152.-88 each. A deed was to be delivered only upon the payment of the purchase price in full. Laubhan and wife entered into immediate possession of the land and established a homestead on the east 200 acres of the tract. Thereafter, in December 1918, Laubhan contracted with Nelson W. Willard of Cook County, Illinois, for the purchase of the SW¼ of Section 1153, containing 162 acres of land, and being in the same block and adjoining section 1136. The consideration for this land was $4,-053.12. Of this amount $400 was paid in cash and the balance was payable in seven annual installments. This contract had the same provisions as to the delivery of a deed as did the contract with Spearman for the N½ of Section 1136. On January 24, 1927, A. W. Kincade and wife deeded to Laubhan the W½ of Section 12, Block 10, in Lipscomb County, Texas, containing 323.1 acres. In connection with such purchase Laubhan executed eight vendor's lien notes, the first in the sum of $3,000 and the other seven in the sum of $1,000 each. The first three of these notes were acknowledged paid and released by Kincade in an instrument dated April 26, 1929 transferring to the Commerce Farm Credit Company the other five notes.

On June 24, 1926 Alex J. Laubhan and wife executed a note in the sum of $8,000, payable to Wm. L. Sharp, and to secure said note Laubhan and wife executed a deed of trust to R. O. Renfrew upon the SW¼ of Section 1153 and the N½ of Section 1136, aggregating 486 acres of land. The legal title to this 486 acres of land was then vested in Nelson W. Willard. The trust deed recited that the mortgagors were in possession of the land under and by virtue of a contract to purchase the same; that they had theretofore paid a portion of the purchase price but that mortgagors represented there was still owing on said lands a sum in excess of the debt thereby secured; that the note for $8,000 therein given was for moneys to be applied upon the purchase price; and that Sharp should have a first lien upon all the land to secure the purchase money advanced by him. The record shows that Nelson W. Willard received $10,870.89 from Sharp's company in connection with this loan, the difference in such amount and the amount of the loan having been paid to Sharp in cash by Laubhan. It is also shown that an indebtedness due the State of Texas upon the land was paid by the mortgagee by money furnished by Laubhan. After these transactions Willard delivered to Laubhan deeds to the N½ of Section 1136 and the SW¼ of Section 1153, reciting cash considerations in conformity to the original contract prices on these two tracts of land.

On February 14, 1929 Laubhan made an application to the Commerce Farm Credit Company for a loan of $13,000 to be secured by a blanket lien upon all of the land above mentioned, consisting of about 807 acres. In this application Laubhan stated that his homestead was worth $15,-000 but was encumbered for $8,000. In answer to questions in his application as to the indebtedness on the property, he answered: "Deed of trust to Wm. L. Sharp, Chicago, Ill., on 480 acres in amount of $8,000.00; $6,000.00 vendor's lien notes held by A. W. Kincade, Follett, Texas, on 320 acres." The loan was made and a trust deed executed by Laubhan and wife to secure the $13,000 upon the 807 acres of land. Three notes were executed in connection with this loan, two in the sum of $500 each and one in the sum of $12,000. This deed of trust recited that the notes were given for money advanced by the Commerce Farm Credit Company to take up and discharge the balance of the indebtedness against the land, partly evidenced by the $8,000 due Sharp in the

first loan and partly evidenced by five notes above mentioned of $1,000 each payable to A. W. Kincade in connection with the purchase of Section 12.

About September 15, 1932 Alex J. Laubhan died intestate. Thereupon his wife qualified as administratrix of his estate. On February 23, 1933, in response to her petition, the County Court of Lipscomb County entered an order setting aside the east 200 acres of the N½ of Section 1136 as a homestead for her and her children, free and clear of all existing liens upon the same. A short time thereafter the Peoria Life Insurance Company filed its claim under article 3515a, Vernon's Annotated Revised Civil Statutes, for the unpaid balance on the $13,000 loan, alleging a lien upon all the property and asking that the same be approved and fixed as a lien. In this claim it was shown that one of the $500 notes had been paid, leaving $12,500 of the principal of the loan unpaid. On May 4, 1933 the administratrix approved the claim as a money demand against the estate but rejected the lien claim against the 200 acre homestead. Thereafter the Peoria Life Insurance Company filed suit in the District Court of Lipscomb County, Texas, to establish its claim as a preferred debt and lien against the estate of Alex Laubhan, deceased. In such suit judgment was rendered allowing the claim and fixing the same as a preferred lien, but the original debt of the second loan being for $13,000 on the 807 acres and the original lien being for only $8,000 against the 480 (486) acres, the judgment allocated to said 480 (486) acres 8/13 of the total amount due, and allowed the claim and fixed it as a preferred lien as against the original 480 (486) acres. From that judgment the first appeal was brought to this court which was predicated upon the authority of the district court to render such a judgment upon the claim filed therein. The Supreme Court, in the opinion found in 129 Tex. 225, 102 S.W.2d 399, 405, held that the procedure provided by article 3515a, passed by the Legislature in 1931, did not apply in the case of a deed of trust executed prior to the passage of the Act, and, since the administratrix formerly had no authority to pass on the lien features of the claim no question was raised that would give the district court original jurisdiction. In making this holding, however, the Supreme Court made this observation: "There is an exception to this

rule to the effect that, if a cause of action such as is here in question involves some legal or equitable right connected with the claim for the adjudication of which the powers of the probate court are inadequate to grant the claimant the full relief to which he is entitled, the district court has jurisdiction in an original action for such purpose."

Other observations were therein made as to the procedure necessary for the claimant to pursue in order to obtain the full relief to which it was entitled. Upon the Supreme Court's holding in that appeal this court in an opinion in 105 S.W.2d 286 reversed the former judgment with instructions that the pleadings should be made to conform to the holding of the Supreme Court with reference to proceeding under the law as it existed prior to the 1931 Act and that if such pleadings did not so conform to the suggestions of the Supreme Court in this respect that the cause be dismissed.

Another phase of this case reached this court by a former appeal. From the order of the probate court setting aside the 200 acres for the homestead for Mrs. Laubhan and her children and declaring such land free from the liens in question, an appeal was prosecuted to the District Court of Lipscomb County, Texas. That court entered a decree affirming the judgment of the probate court to the extent that it set aside the homestead to the administratrix and her children, but further adjudged that the probate court was without power to cancel and discharge the liens, and that part of the judgment of the probate court was reversed by the district court. From that judgment of the district court an appeal was prosecuted to this court. In such cause, known as Laubhan v. Peoria Life Ins. Co. et al., in an opinion reported in 107 S.W.2d 889, this court affirmed the judgment of the district court.

After the first trial of this cause in the district court the Peoria Life Insurance Company went into the hands of a receiver and the claim and deed of trust lien involved herein were assigned to the Alliance Life Insurance Company, who became the plaintiff below in the second trial and who is now the appellee herein. In conformity to the holdings of the Supreme Court and of this court in the first appeal, the appellee presented an amended claim in compliance with the old procedure prior to the passage of article 3515a, and assert-

ed in said claim that the appellees recognized the fact that under the law prior to 1931 the administratrix had no power to determine the validity of the deed of trust lien asserted by the claimant. The claim thus filed also showed that only $500 of the principal of the $13,000 loan had been paid. The administratrix refused to take any action on the amended claim. Thereupon the appellee filed a second amended petition in the district court setting out the facts herein above outlined and alleged that it had prepared and filed with the administratrix its claim showing a balance due on the indebtedness in the sum of $19,160.45 as of November 8, 1937. In such petition the appellee further alleged that it had in equity a right of subrogation to the liens and equities of the original holders of the instrument sued upon and that by reason of the contractual provisions of such instruments and the facts in connection therewith, the appellants were estopped to claim the homestead free of any lien. The appellee prayed that its lien be approved by the district court and that it be decreed by such court that a good and valid lien existed in its favor upon all the property above described. Upon a trial of the case the jury, under instructions of the court, returned a verdict in favor of the appellee for $324/486 of $9/13 of the amount of the claim filed by the Peoria Life Insurance Company. Thereupon the trial court rendered judgment that such claim filed by the Peoria Life Insurance Company, and amended by the Alliance Life Insurance Company, be approved and classified by the probate court as a claim of the third class against the estate of Alex J. Laubhan. The judgment further provided, however, that the 200 acre homestead was subject to $324/486 of $9/13 of the amount of the claim filed by the Peoria Life Insurance Company, which sum was found to be $7,603.-50, "for the reason that the indebtedness now held by plaintiff is in renewal and extension of $8,000.00, which was formerly a lien against 486 acres, which includes the homestead, the homestead being located on the North ½ of Section 1136, Block 43, H&TC Ry Co Surveys, which contains 324.1 acres of land, and the Southwest ¼ of section 1153, in Block 43, above described, which contains 162.125 acres of land, and the remaining portion of said indebtedness owing the plaintiff by said estate, to-wit, $162/486 of $9/13ths of said indebtedness, together with the remaining $5/13ths of said indebtedness, be fixed as a lien against the west ½ of Section 12, Block 10, Certificate $5/6, H. T. & B. Ry. Co., Surveys, in Lipscomb County, Texas, and the Southwest ¼ of Section No. 1153, Block 43, H&TC Ry Co Surveys in Lipscomb County, Texas." The court further ordered that attorneys' fees on the claim be decreed a lien on the SW¼ of Section 1153 and against the W½ of Section 12, but that no portion of such attorneys' fees be fixed as a lien against the N½ of Section 1136, containing the homestead. This judgment was ordered certified to the probate court of Lipscomb County, Texas, for observance. From this judgment the present appeal is before us.

It should be borne in mind that this controversy does not involve a foreclosure of any lien but merely the fixing of the amount of the lien to be adjudged against the homestead. The amount of the indebtedness against the estate is not controverted. The controlling question in the case is whether or not the trial court erred in establishing a lien against the homestead for $324/486 of $9/13 of this total indebtedness.

The deed of trust held by the appellee as assignee under the second loan in the sum of $13,000 upon the 807 acres of land was in part a renewal and extension of the first loan of $8,000 upon the 486 acres of land. The first loan shows on its face that it was made to enable Laubhan to obtain funds by which he might acquire legal title to the 486 acres, which included the homestead. As above stated the deed of trust given in connection with this first loan recited that the legal title to the land was then vested in Nelson W. Willard; that Laubhan and wife were indebted to Willard under a contract to purchase the land in an amount in excess of the $8,000 debt therein secured; that the note for $8,000 given by Laubhan in connection with the loan was for money to be applied by the mortgagee, Wm. L. Sharp, upon the purchase price of the land; and that Sharp should have a first lien upon the 486 acres to secure this purchase money. The money upon this loan was actually advanced to Willard on the purchase price, and applied upon the indebtedness due the State of Texas in order to secure a patent upon the land.

At the time the second loan in the sum of $13,000 was made the $8,000 note of the first loan was still outstanding. This second loan included as security the 486 acres

mortgaged in the first loan and the W½ of Section 12, making a total of 807 acres. As above stated this trust deed recited that the notes aggregating $13,000 secured therein were for money advanced by the Commerce Farm Credit Company to take up and discharge the $8,000 note given in the first loan and $5,000 in notes that Laubhan owed Kincade on the W½ of Section 12. The deed of trust was signed and acknowledged by both Alex Laubhan and Barbara Laubhan. The instrument stipulated that the Commerce Farm Credit Company "shall be and is hereby subrogated to all the rights, titles, liens, remedies and equities now existing to secure and enforce the payment of said notes, all of which are extended and continued with the terms and provisions of this instrument."

On the issue of estoppel urged by the appellee we do not believe the representations of Laubhan in the application for the second loan with reference to the indebtedness would be such representations as would estop the appellants from denying that the homestead tract was encumbered for the full amount of the $8,000 loan. Although the deceased stated in such application that his homestead was encumbered for $8,000, he also stated in the same instrument that the $8,000 lien was held by Sharp against 480 (486) acres of land, which necessarily included more than the homestead tract. He further stated in the application that he had lived on the land for the past ten years and that the East 200 acres of the N½ of Section 1136 had constituted his homestead during such period. In this connection the testimony shows that the Laubhans cultivated the homestead tract in 1916; that half the family moved on the tract in 1917; that all the family moved onto the tract in 1918 where they lived until the death of Alex J. Laubhan in 1932; and that since his death the widow and children have continued to occupy such land as their homestead.

Under the above facts, which are uncontroverted, we think the proof at least fails to acquit the homestead of any chargeable portion of the debt and lien held by the appellee. As to how much of the present indebtedness against the 807 acres should be charged as a lien against the homestead presents a more difficult question. The judgment of the trial court, in charging against the homestead $\frac{324}{486}$ of the indebtedness, in effect, charged $\frac{324}{486}$ or ⅔ of the original indebtedness of $8,000 on the homestead in connection with the first loan on the 486 acres. This was due apparently by reason of the ratio between the number of acres in the original tract containing the homestead and the 486 acres in both tracts involved. The second fraction of $\frac{8}{13}$ is apparently based upon the ratio of the respective amounts of the two loans.

It is our opinion, however, that the court's charging $\frac{324}{486}$ of the $8,000 loan as a lien against the homestead was unwarranted under the facts in this case. There is no showing as to the amount unpaid as purchase money on the N½ of Section 1136 nor upon the SW¼ of Section 1153 at the time the $8,000 loan was made nor at any other time. It is true that the deed of trust executed in connection with the first loan stated that there was "still owing on the contract price of the lands" a sum in excess of the debt thereby secured, but as to how much was due upon each separate tract at such time, the record is entirely silent. In this connection we call attention to the fact that the homestead of the Laubhans was established on the N½ of Section 1136 long before the $8,000 loan was made. After establishment of the homestead on the former tract no portion of the indebtedness due upon any other land could be charged as a lien against the homestead, yet the evidence does not show that this very thing was not done by the court's charging $\frac{324}{486}$ of the $8,000 loan against the homestead. The burden in this respect is upon the appellee. The homestead having been carved out of the N½ of Section 1136 after the contract to purchase this tract was made, it is true that the homestead would be chargeable with the unpaid purchase price outstanding against this tract, yet, it should be said in passing, that even in the event of a foreclosure, the administratrix could compel first the sale of the non-exempt land in satisfaction of the debt before resort could be had to the homestead. But in no event could the homestead be impressed for a lien for indebtedness upon other lands after the homestead was established. Since the Laubhans obtained an equitable title and interest in the homestead tract under the contract to purchase the land in 1916, there can be no doubt that they could establish a homestead upon the land before they acquired the legal title in 1926.

In seeking to uphold the court's judgment in this respect the appellee contends that the record shows two payments by Laubhan in 1926 totaling $3,600, which, the appellee asserts, were applied upon the SW¼ of Section 1153, thereby reducing the original indebtedness of $4,053.12 on this tract to a nominal sum, and thus removing the possibility of any overcharge on the homestead in the judgment. It is true the record reveals two receipts issued to Laubhan by A. W. Kincade, one in the sum of $1,300 and the other in the sum of $2,300. The first is dated June 25, 1926 and the second June 12, 1926. They each acknowledged the receipt of the respective sums and each stipulated that such sums were "to apply on land contracts with Nelson W. Willard". The appellee contends that these receipts show that the money was applied upon the SW¼ of Section 1153 because such tract was the only tract of land that Laubhan contracted to purchase from Nelson W. Willard. It is true that this tract is the only one the record shows was purchased in a contract with Willard, but before the time these receipts are shown to have been issued the record reveals that the legal title to the N½ of Section 1136 and the SW¼ of Section 1153 was in Nelson W. Willard.' How Willard acquired the legal title to the N½ of Section 1136 from Thomas C. Spearman is not shown. Anyhow, the term "land contracts", as used in the receipts, if signifying anything, would raise the presumption that the money was to be applied upon the indebtedness of more than one tract of land. In this connection it should also be stated that the record fails to disclose any reason why A. W. Kincade would be receiving money or issuing receipts in connection with land he is not shown to have ever had any interest in. The only land with which Kincade is shown to have had any connection was the W½ of Section 12, which fact would be just as persuasive of the proposition that the money evidenced by these receipts related to payments on the W½ of Section 12 under some purchase contract not shown in the record as it would be that they related to contracts relative to either of the other two tracts of land. At any rate the receipts are too indefinite to show that ³²⁴⁄₄₈₆ of the indebtedness due at the time the first loan was made was outstanding against the tract containing the homestead, nor is this hiatus in the testimony supplied from any other source. It is entirely possible, and perhaps probable, that upon another trial of this case it will be shown that as much as, or even more than, ³²⁴⁄₄₈₆ of the indebtedness against the two tracts of land involved in the first loan was then outstanding against the homestead tract, but in the absence of some definite showing as to the amount outstanding against the homestead tract either then or now, we feel unwarranted in allowing the present judgment to stand. While we have no doubt that a potential lien exists against the homestead for a portion of the total indebtedness now outstanding, the amount thereof is indefinite and uncertain under the facts of this case. It is our opinion that the true criterion with which to determine what portion of the present indebtedness is chargeable as a lien against the homestead should be based solely upon the amount of the indebtedness unpaid upon the purchase price of the N½ of Section 1136 plus whatever interest has accrued thereon, and that in no event should such amount be increased by any other indebtedness of any sort. It is not so much a question of ratio between acres or dollars as it is an issue of how much of that unpaid purchase price of the homestead tract, with accrued interest, still exists and has come on down through the years unpaid, finally merging into the present indebtedness. By reason of the insufficiency of the testimony to support the judgment of the trial court as above indicated this cause must be reversed.

Reversed and remanded.